FILED
CLERK

11/04/2025

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
UNITED STATES OF AMERICA,

       -against-

CHARLES GAMBLE,

                Defendant.
--------------------------------X

MEMORANDUM AND ORDER
18-CR-0606(JS)

APPEARANCES

For the Government:  Michael R. Maffei, Esq.
                   United States Attorney's Office
                   Eastern District of New York
                   610 Federal Plaza
                   Central Islip, New York  11722

For the Defendant:  Charles Gamble, Pro se
                  #65941-056
                  FCI Ray Brook
                  Federal Correctional Institution
                  P.O. Box 900
                  Ray Brook, New York  12977

SEYBERT, District Judge:

        Currently before the Court is the pro se motion of Defendant Charles Gamble ("Defendant" or "Gamble") seeking a sentence reduction pursuant to the First Step Act (the "FSA", the "Act" or the "First Step Act"), 18 U.S.C. § 3582(c)(1)(A) (hereafter, the "Motion").[1] (See ECF No. 590; see also Reply, ECF

---

[1] To the extent Defendant's Motion, the Government's Opposition or this decision uses the terminology "compassionate release", the Court notes that phrase is not contained in the First Step Act; rather it is one coined by the courts to characterize a reduction in sentence pursuant to the Act. See, e.g., United States v. Shakur, 498 F. Supp. 3d 490, 492 (S.D.N.Y. 2020); see also United States Brooker, 976 F.3d 228, 237 (2d Cir. 2020) (stating the phrase "compassionate release is a misnomer" as the First Step Act "in fact speaks of sentence reductions").

No. 597[2]).  In essence, Defendant asks the Court to reduce his sentence to time served.  The Government opposes the Motion.  (See Opp'n, ECF No. 593).  For the following reasons, the Motion is **DENIED** without prejudice.

BACKGROUND

I.  Relevant Factual Background

The Court presumes the parties' familiarity with the facts of this case.  See generally United States v. Hopkins, 18-CR-0606, 2024 WL 4388454, at *1 (E.D.N.Y. Oct. 2, 2024); United States v. Latney, No. 18-CR-0606, 2025 WL 1126474, at *1 (E.D.N.Y. Apr. 16, 2025).  However, for the reader's convenience, the Court provided the following summary.

Beginning in early 2018, members of the Federal Bureau of Investigation and the Suffolk County East End Drug Task Force undertook investigating narcotics trafficking and gang activity on the East End of Long Island.  (See, e.g., Presentence Report ("PSR"), ECF No. 246 (sealed), at ¶3.)  As part of its investigation, law enforcement identified a wide-ranging conspiracy between approximately ten individuals, most of whom were affiliated with various subsets of the Bloods, a violent street gang, to deal large quantities of crack cocaine.  (See id.

---

[2]  Herein, the Court will cite to the internal page numbers of Defendant's Motion and Reply.

2

at ¶¶3-5.)  Indeed, Defendant was "a member of the Low Rider Brim set of the Bloods."  (See id. at ¶19.)

Defendant was part of the conspiracy, even though he also operated as an independent drug distributor.  (See id. ¶17.) During the course of the conspiracy, Defendant regularly engaged in street-level drug sales at his home.  (See id.)  He also sold drugs on one occasion from the home of co-defendant Romaine Hopkins.  Further, co-defendant Terrill Latney was present at Defendant's home during two drug transactions with cooperating informants.  (See id.)

## II.  Relevant Procedural Background

After his November 2018 arrest related to the subject conspiracy, on February 11, 2020, Defendant plead guilty to Count Eighteen of the underlying Superseding Indictment (ECF No. 106), to wit, conspiring to distribute and possess with intent to distribute 280 grams or more of crack cocaine and cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(iii), and 841(b)(1)(C).  (See Plea Hr'g Minute Entry, ECF No. 192.)  This Court accepted Defendant's plea, pursuant to a plea agreement with the Government, on March 13, 2020.  (See ECF No. 201.)

Notwithstanding he was subject to a much higher Guidelines range of 262 to 327 months' imprisonment due to his status as a career offender (see PSR at ¶¶44, 75, 106), and which Guidelines estimate was included in Defendant's plea agreement

3

(see Opp'n at 2), pursuant to said plea agreement, the Court imposed the 120-month mandatory minimum sentence advocated by the parties. (See Judgment, ECF No. 339; see also Opp'n at 2.) The below-Guidelines sentence reflected Defendant's "lesser role vis-à-vis several other members of the conspiracy, who were violent" balanced against his career offender status. (Opp'n at 2; see also Motion at 1; Statement of Reasons, ECF No. 340 (sealed), § VIII ("After reviewing the Sentencing Guidelines and the criteria set out in 18 USC § 3553(a), it is this Court's opinion that a sentence of one hundred and twenty (120) with a five (5) year term of Supervised Release, is sufficient, but not greater than necessary, to comply with the purposes of § 3553(a).").)

Defendant is currently 44-years-old and is serving his sentence at Federal Correctional Institution ("FCI") Ray Brook in Ray Brook, New York; he has an anticipated release date of December 23, 2027. See Fed. Bureau of Prisons ("BOP"): Find an Inmate, Charles Gambe (BOP Reg. No. 65941-056), https://www.bop.gov/inmateloc/ (last visited Oct. 31, 2025) (identifying Defendant's location as "Ray Brook FCI").

III. The Instant Motion

On June 30, 2025,[3] Defendant filed his Motion. He claims there are several extraordinary and compelling reasons warranting

---

[3] Defendant's Motion is undated (see Motion at 4), but was mailed on June 25, 2025 (see corresponding mailing envelope, ECF No. 590

a reduction in his sentence, to wit: (1) the death of his teenaged son (see Motion at 2); (2) his rehabilitation (see id.); (3) the alleged sentencing disparity with co-defendants (see id. at 3); (4) harsh conditions caused by the implementation of COVID-19 protocols (see id.); and (5) high blood pressure (see id.). Further, Defendant argues consideration of the relevant Section 3553(a) Factors weigh in favor of a sentence reduction (see id. at 3-4). In advancing that position, Defendant emphasizes, inter alia: his limited, nonviolent role in the conspiracy; his rehabilitation and remorse; his good conduct and age demonstrates he is not a danger to society; and, having served more than half his sentence, during which time he has "endur[ed] profound personal loss", has provided just punishment. (See id.)

Defendant supported his Motion with various letters: (1) a letter of contrition (Ex. A, ECF No. 590 at ECF p.6-7); (2) letters from his children (Ex. D, ECF No. 590 at ECF p.10; Ex. F, ECF No. 590 at ECF p.12); (3) a letter from the mother of two of his children (Ex. H, ECF No. 590 at ECF p.14 (offering support and home)); (4) a letter from a friend (Ex. G, ECF No. 590 at ECF p.13 (offering temporary housing)); and (5) support letters from fellow inmates (Ex. B, ECF No. 590 at ECF p.8; Ex. I, ECF No. 590 at ECF p.15; Ex. J, ECF No. 590 at ECF p.16). Defendant also proffers:

_____

at ECF p.101) and received and filed with the Court on June 30, 2025 (see Motion at 1).

5

(6) a job offer (Ex. C, ECF No. 590 at ECF p.9); (7) what he characterizes as his "Custody Classification Form" (Ex. K, ECF No. 590 at ECF pp.18-24); (8) his "Individualized Needs Plan" (Ex. L, ECF No. 590 at ECF pp.25-26); (9) his disciplinary record (Ex. M, ECF No. 590 at ECF p.27 (indicating three incidents)); (10) copious certificates evidencing completion of various courses (id. at ECF pp. 28-37); and (11) his BOP medical records (Ex. N, ECF No. 590 at ECF pp.9).

Additionally, Defendant proffers a re-entry plan, stating he has a guaranteed employment opportunity and two stable housing options. (See Motion at 4.) Defendant "intends to obtain work", "pursue his education", "engage in community" and "be reunited with his children". (Id.)

Unsurprisingly, the Government opposes Defendant's Motion, asserting Defendant is not able to meet his burden of establishing extraordinary and compelling reasons for a sentence reduction. (See Opp'n.) It asserts: (1) Defendant misconstrues the tragic death of his teenage son with the death of a child's sole caregiver; (2) there is no sentencing disparity with certain co-defendants; (3) the conditions of Defendant's confinement during the Pandemic were no different than those of his fellow inmates; and (4) without any other extraordinary and compelling circumstance, Defendant's rehabilitative efforts cannot be relied upon to meet his burden. (See id. at 6.) Further, the Government

6

maintains the Section 3553(a) Factors outweigh any extraordinary and compelling reasons Defendant may be able to establish, thereby requiring his continued incarceration.  (See id. at 7-8.)  In particular, it contends: Defendant's offense of conviction is serious, with his drug dealing "blight[ing] communities and ruin[ing] lives" (id. at 7); Defendant's criminal conduct was "part of a pattern of criminal conduct several decades long" (id.); reducing Defendant's sentence "would erode respect for the law" (id. at 8); since neither of Defendant's prior sentences "were sufficient to deter [him] from continuing to commit criminal conduct", maintaining this sentence is necessary for deterrence purposes (see id.); and, the present sentence is needed to protect the public and ensure respect for the law (see id.).

DISCUSSION

I.   Applicable Law

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)).  The FSA, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's

7

behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see also United States v. Thrower, 495 F. Supp. 3d 132, 137 (E.D.N.Y. 2020). "The statute imposes three independent, necessary requirements for release: exhaustion of remedies, existence of an extraordinary and compelling reason for sentence reduction, and that the § 3553(a) [F]actors warrant reduction." United States v. Hunter, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam)); United States v. Rodriguez, 147 F.4th 217, 222 (2d Cir. 2025) (same). "A defendant's failure to exhaust administrative remedies is a threshold matter preventing the [c]ourt from considering a Section 3582 application[, i.e., a motion for compassionate release]." United States v. Robinson, No. 10-CR-0789, 2022 WL 16924176, at *3 (E.D.N.Y. Nov. 14, 2022) (quoting United States v. Alvarez, No. 89-CR-0229, 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020)). And, "[i]f any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements." Hunter, 2022 WL 2288688, at *1 (citing Keitt, 21 F.4th at 72-73); see also, e.g., United States v. Pimentel, No. 23-7096-CR, 2025 WL 783730, *2 (2d Cir. Mar. 12, 2025) (summary order) (affirming district court's denial of compassionate release where lower court's denial was based solely on applying Section 3553(a)

8

Factors, which it found did not warrant consideration of proffered extraordinary and compelling reasons; quoting Keitt).

Where exhaustion is satisfied, in their consideration of motions brought pursuant to the FSA, courts are to consider whether a sentence "reduction is consistent with applicable policy statements issued by the Sentencing Commission", 18 U.S.C. § 3582(c)(1)(A); see also U.S.S.G. § 1B1.13 ("Policy Statement 1B1.13"), and whether the relevant Section 3553(a) Factors favor such a reduction. See United States v. Donato, No. 95-CR-0223, 2024 WL 1513646, *5 (E.D.N.Y. Apr. 18, 2024);[4] see also Keitt, 21

---

[4]  In Donato, Judge Azrack of this District explained:

> In 2020, the Second Circuit determined that the applicable policy statement—U.S.S.G. § 1B1.13—does not apply to motions for compassionate release filed by defendants because the statement's language referenced only motions filed by the Director of the Bureau of Prisons. See United States v. Brooker, 976 F.3d 228, 235–37 (2d Cir. 2020). [T]he Sentencing Commission has since amended the policy statement, such that it now explicitly covers motions for compassionate release brought by individual defendants. See U.S.S.G. § 1B1.13(a) ("Upon motion of the Director of the Bureau of Prisons or the defendant, . . . the court may reduce a term of imprisonment . . . .") (emphasis added). As a result, courts in this circuit have determined that "Brooker does not apply to the new version of Policy Statement 1B1.13 . . . . [and that] to grant a motion for compassionate release, a court must now . . . find that granting such relief is consistent with Policy Statement 1B1.13." United States v. Feliz, [No. 16-CR-0809,] 2023 WL 8275897, at *4

F.4th at 71.  However, "'[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'"  United States v. Brooker, 976 F.3d 228, 235–37 (2d Cir. 2020) (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)); see

---

> (S.D.N.Y. Nov. 30, 2023) (quotation marks omitted); see also United States v. Andrews, [No. 01-CR-0450,] 2023 WL 8477993, at **2–5 (S.D.N.Y. Dec. 7, 2023) (analyzing the recent amendments to Policy Statement 1B1.13 and applying it to a defendant's motion for compassionate release).  Accordingly, the amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated.  See generally U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023); see also United States v. Lopez, [No. 16-CR-0317,] 2024 WL 964593, at *2 (S.D.N.Y. Mar. 5, 2024.)

Donato, 2024 WL 1513646, at n.10; see also Feliz, 2023 WL 8275897, at *1 (stating recent amendments, "which updated Section 1B1.13 of the U.S. Sentencing Guidelines Manual to harmonize the provision with the First Step Act of 2018, have changed the legal framework promulgated by the Second Circuit in United States v. Brooker, 976 F.3d 228 (2020)"), and at *4 ("Brooker does not apply to the new version of Policy Statement 1B1.13 because the Policy Statement, as amended, is now applicable to compassionate release motions brought in court by defendants. . . .  Accordingly, to grant a motion for compassionate release, a court must now, in addition to finding that the other elements of the compassionate release standard are satisfied, . . . also find that granting such relief is consistent with Policy Statement 1B1.13, which sets forth the circumstances under which an extraordinary and compelling reason for compassionate release or sentence reduction would exist." (internal quotation marks omitted)); United States v. Torres-Teyer, No. 01-CR-0021, 2025 WL 2776048, at * 3 (S.D.N.Y. Sept. 30, 2025) (stating a "defendant must show [] extraordinary and compelling reasons that, consistent with Policy Statement 1B1.13, warrant a sentence reduction . . . . " (citing Feliz, 2023 WL 8275897, at *2-4 & n.3; further citation omitted)).

also U.S.S.G. § 1B1.13(d). Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) [F]actors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) [F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted); see also Pimentel, 2025 WL 783730, at *2; United States v. Jones, No. 22-2008-CR, 2023 WL 8613867, at *2 (2d Cir. Dec. 13, 2023) (same). "[A] statement that the district court has considered the statutory factors is sufficient." United States v. Torres, No. 21-2511-CR, 2022 WL 17087048, at *3 (2d Cir. Nov. 21, 2022) (summary order) (quoting United States v. Gammarano, 321 F.3d 311, 315-16 (2d Cir. 2003)).

        "The defendant bears the burden of showing that the circumstances warrant a sentence reduction." United States v. Sellick, No. 21-2328, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order) (citing United States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021)); see also United States v. Friedlander, No. 20-CR-0441, 2022 WL 2305370, at *3 (E.D.N.Y. June 24, 2022) ("A defendant 'bears the burden of showing that his release is justified.'" (quoting United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020)).

"A district court's discretion in deciding a compassionate release motion—as in all sentencing matters—is broad." Rodriguez, 147 F.4th at 222 (quoting Brooker, 976 F.3d at 237) (citation modified).

## II.   Application

### A.   Exhaustion

Defendant maintains he has exhausted his administrative remedies.   (Motion at 3.)   Supporting this claim, Defendant includes as an exhibit his request for compassionate release made to the warden (see Ex. O, ECF No. 590 at ECF pp.100, attached to Motion), which the warden denied (see id. at ECF p.99).   The Government does not address the threshold exhaustion requirement. (See Opp'n, in toto.).   Hence, considering Defendant's proffered Exhibit O and the Government's non-response to Defendant's claimed exhaustion of his administrative remedies, the Court finds Defendant has satisfied the exhaustion requirement and proceeds "to consider the merits" of his Motion.   See generally United States v. Saladino, 7 F.4th 120, 123 (2d Cir. 2021); see also United States v. Vasquez, No. 96-CR-1044, 2024 WL 2385264, *3 (E.D.N.Y. May 23, 2024) ("[B]ecause the Government has not raised an exhaustion defense, the Court finds that it has forfeited any such defense and the Court is 'free to consider the merits' of [defendant's compassionate release] motion" (quoting Saladino; collecting cases)).

B.    <u>Defendant's Proffered Extraordinary and Compelling Circumstances</u>

In accordance with Policy Statement 1B1.13, the Court considers Defendant's claims of extraordinary and compelling circumstances warranting a sentence reduction.  For the reasons articulated below, it finds Defendant's proffered circumstances unavailing.

1.    <u>The Death of Defendant's Teenaged Son</u>

The late Queen Elizabeth II of England is attributed with saying:  "Grief is the price we pay for love."  While the 2023 death of Defendant's son was undoubtedly tragic, its accompanying grief, unfortunately, is part of the human condition.  Grief is not exclusive to those who are incarcerated.  Hence, the Court is restrained from finding Defendant's grief, which he attests as being the impetus for his "profound transformation" (Contrition Letter at 1 (stating Defendant's grief led him to prayer, which led him to "a transformative relationship with God")), to be extraordinary or compelling in the context of the FSA.[5]  And, while it is understandable Defendant would like "to be present for [his] surviving children" and to "heal alongside [his]

---

[5]  Nonetheless and to be clear, the Court's rejection of Defendant's grief argument is by no means meant to diminish the depth of loss felt by Defendant and his family.  As Defendant himself states: "[T]here are no words that can adequately describe what it feels like to lose a child."  (Contrition Letter.)  True.  "Grief turns out to be a place none of us know until we reach it."  Joan Didion, <u>A Year of Magical Thinking</u> 188 (2005).

family" (Motion at 2), neither is that wish extraordinary nor compelling. See, e.g., United States v. Lake, No. 14-CR-0264, 2023 WL 8810620, at *4 (E.D.N.Y. Dec. 20, 2023) ("Defendant's desire to have more involvement in his daughter's life, while laudable, is not grounds for granting his Motion. Indeed, the Court would be hard-pressed to find an incarcerated parent who does not wish to be a greater part of his or her child's life; by its mere near-universality, this reason for wanting to be released from prison is no more than ordinary and provides no support for Defendant's Motion.").

Further, the Court agrees with the Government's assessment that Defendant appears to "misconstrue the death or incapacitation of a minor child with the death o[r] incapacitation of the caregiver of a minor child." (Opp'n at 6.) And, the cases Defendant puts forth in support of his grief argument, i.e., United States v. Wooten, No. 13-CR-0018, 2020 WL 6119321 (D. Conn. Oct. 16, 2020), and United States v. Riley, No. 17-CR-0012, 2020 WL 3034843 (D. Md. June 5, 2020), are unavailing. A review of both cases supports the Government counter that: "Wooten speaks to the death or incapacitation of a caregiver; [and,] Riley makes no mention of death or incapacitation of anyone." (Opp'n at 6.) Hence, regrettably, because the untimely death of Defendant's teenaged son does not comport with Policy Statement 1B1.13, the resulting grief Defendant and his family are experiencing cannot

14

serve as an extraordinary and compelling reason to reduce Defendant's sentence.

   2.   <u>Defendant's Rehabilitation</u>

   Defendant states, "he has shown exceptional commitment to personal development and rehabilitation" and "has remained infraction-free for over three years." (Motion at 2.) Further, in his letter of contrition, Defendant asserts, <u>inter alia</u>: "Each day, I work to be better than I was the day before", and "Since my incarceration, I've committed myself to education and self-improvement." (Contrition Letter, Ex. A, at 1.) He contends not to be "the same person who stood before this court at sentencing", but one who now "understands accountability" and "has the power to choose a better path." (<u>Id.</u> at 1-2.) He recognizes that granting compassionate release is within the Court's discretion and rehabilitation is a factor considered in conjunction with other factors in determining whether to grant relief. (<u>See, e.g.,</u> Reply at 1.)

   The Court begins by reiterating that, notwithstanding its broad discretion in considering "all possible reasons for compassionate release," "rehabilitation <u>alone</u> shall not be considered an extraordinary and compelling reason." <u>Brooker</u>, 976 F.3d at 237-38 (citing 28 U.S.C. § 944(t) (cleaned up)); <u>see also</u> Policy Statement 1B1.13(d) ("Pursuant to 28 U.S.C. § 994(t), rehabilitation on the defendant is not, by itself, an extraordinary

15

and compelling reason for purposes of this policy statement."). Moreover, "[w]hat constitutes rehabilitation is left to the [c]ourt's discretion, but courts in this district have considered the following factors: [1] the defendant's 'maintenance of familial and societal relationships; [2] letters of support both from community members and prison staff; [3] conduct and disciplinary records while incarcerated; . . . [4] any achievements and education obtained while incarcerated; . . . [5] gains in maturity[;] and [6] other clear signs that a defendant's incarceration has had rehabilitative value'." United States v. Vasquez, No. 96-CR-1044, 2024 WL 2385264, at *5 (E.D.N.Y. May 23, 2024) (quoting United States v. Byam, No. 12-CR-0586, 2024 WL 1556741, at *8 (E.D.N.Y. Apr. 10, 2024)) (emphasis added); see also, e.g., United States v. Qadar, No. 00-CR-0603, 2021 WL 3087956, at *10 (E.D.N.Y. July 22, 2021) (same). "At minimum, 'rehabilitation requires the court to examine whether a defendant has taken responsibility for his . . . actions and acted to reintegrate [him]self into a productive society.'" Byam, 2024 WL 1556741, at *7 (quoting United States v. Blake, 89 F. Supp. 2d 328, 346 (E.D.N.Y. 2000)).

Recently, in denying a compassionate release motion of one of Defendant's co-defendants, Terrill Latney, where Latney showed "significant strides in his rehabilitation", this Court found Latney's "commendable rehabilitation [wa]s not enough".

16

United States v. Latney, No. 18-CR-0606, 2025 WL 1126474, at *7 (E.D.N.Y. Apr. 16, 2025).[6] So, too, does the Court find that to be the case here; Defendant's rehabilitation is not enough to establish an extraordinary and compelling reason warranting a sentence reduction.

Defendant's co-defendant, Latney: presented evidence of maintaining familiar relationships; provided letters of support from a prison chaplain, an attorney, and fellow inmates; and, submitted a letter of contrition.[7] See id. at *7-8. While the Court found defendant Latney's rehabilitative efforts "laudable", his rehabilitation alone did not warrant a sentence reduction. Id. at *8. Juxtaposed against Latney's efforts, Defendant's rehabilitative efforts require the same result. In the instant case, Defendant has demonstrated: the maintenance of familial relationships; letters of support from inmates; many certifications of completed courses; and, other clear signs his incarceration has had strong rehabilitative value. Yet, as the Court explained in Latney, which explanation applies equally here:

---

[6] The Court notes its denial of Latney's compassionate release motion disproves Defendant's contention "that all of his codefendants are on the streets besides him." (Reply at 1.)

[7] Latney had a blemish-free disciplinary record while incarcerated. See Latney, 2025 WL 1126474, at *8 n.3. In comparison, Defendant admits to three infractions. (See Ex. M.) However, "[h]e has remained infraction-free for over three years . . . ." (Motion at 2.) The Government does not dispute this claim. (See Opp'n, in toto.)

As the Government persuasively argue[d in opposing the granting of compassionate release]:

> [S]ince rehabilitation and "model prison conduct is expected" of federal inmates, the [D]efendant should not be granted compassionate release on this basis. United States v. Veliu, No. 17-CR-0404, 2022 WL 2484240, at *5 (E.D.N.Y. July 6, 2022); see also United States v. Reyes, No. 20-3285, 2022 WL 1669388, at *1 (2d Cir. May 26, 2022) (summary order) (affirming compassionate release denial where district court "acknowledged [the defendant's] efforts toward rehabilitation, [but] nevertheless found that the [S]ection 3553(a) [F]actors weighed heavily against a sentence reduction" based on the defendant's conduct); United States v. Garcia, No. 19-CR-210 (CS), 2022 WL 672758, at *2 (S.D.N.Y. Mar. 7, 2022) ("Maintaining good conduct in prison is not uncommon, and indeed is expected.").

The Court cannot disagree.

Id. at *8 (omitting internal citation). Because "rehabilitation is expected of a federal inmate", id. at *3, even though this Court considered Latney's rehabilitation when deciding his compassionate release motion, it found said rehabilitation was insufficient to meet his burden of showing extraordinary and compelling circumstances. See id. The Court elucidated:

> Here, the only factor Latney is able to demonstrate as within the purview of being "extraordinary and compelling" is his rehabilitative efforts. However, laudable as those efforts are -- and, the Court finds Latney's efforts are laudable in this instance

18

-- it is also well-settled that the Court may not make an "extraordinary and compelling" finding based solely upon a defendant's rehabilitation.  See Brooker, 976 F.3d at 237-38 ("The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'") (citing 28 U.S.C. § 994(t); emphasis added in Brooker; cf., e.g., United States v. Russo, 643 F. Supp. 3d 325, 332 [(E.D.N.Y. 2022)] ("[R]ehabilitation alone would not suffice as extraordinary and compelling, but it weighs in [defendant's] favor alongside consideration of multiple other factors.").  Thus, because the Court finds Defendant's other proffered reasons for granting his Motion are neither extraordinary nor compelling, the weight his rehabilitation efforts might have added to the Court's calculus of the totality of the circumstances is without effect; hence, there is no ground to reduce Defendant's sentence.

Id.

For the reasons articulated in Latney, which reasons the Court incorporates by reference herein, the same holds true in the present case.  "[A] productive institutional record while incarcerated is what is expected and is not a basis for a sentence reduction here."  United States v. Baptiste, No. 15-CR-854, 2024 WL 3425818, at *2 (S.D.N.Y. July 16, 2024) (citation modified); see also, e.g., Alvarez, 2020 WL 4904586, at *7 (recognizing "model prison conduct is expected").  Because, as discussed supra and infra, the Court finds Defendant's other proffered reasons for granting him compassionate release--i.e., the death of his teenaged son; the alleged sentence disparity with other

19

co-defendants; harsh conditions of confinement; and, his hypertension--are neither extraordinary nor compelling, the weight of his rehabilitation efforts, while laudable, does not tip the scale in favor of a sentence reduction.[8] See, e.g., United States v. Rodriguez, No. 96-CR-0959, 2025 WL 212766, at *5 (S.D.N.Y. Jan. 26, 2025) ("While Rodriguez's efforts at rehabilitation through completing numerous educational programs (and recently receiving his GED), serving as a mentor to other inmates, and maintaining a relationship with his family are commendable, rehabilitation is 'not, by itself, an extraordinary and compelling reason' for a sentence reduction." (citations omitted)); United States v. Tillman, No. 13-CR-0362, 2023 WL 355624, at *4 (S.D.N.Y. Jan. 23, 2023) ("While the Court commends Tillman for apparently

---

[8] Nonetheless, as it did in Latney and Farmer, the Court encourages Defendant to, as he stated in his Contrition Letter, "continue on []his path of transformation guided by [his] faith and dedicated to honoring the memory of [his] son by becoming the best version of [him]self." (Contrition Letter at 2.) See Latney, 2025 WL 1126474, at *8 n.3 (urging Latney "to continue pursuing all available rehabilitation opportunities and fully utilize the BOP Time Credits programs and activities in order to achieve further early release, if available to him" and encouraging him "to mentor younger inmates while he remains incarcerated, especially by way of his example in maintaining a blemish-free disciplinary record"); Farmer, 2025 WL 3033762, at *14 n.14 (finding, where defendant faced "a life sentence, where vigorously pursuing rehabilitation does not necessarily offer concrete benefits, e.g., earned time credit", defendant's rehabilitation efforts were "doubly commendable" and recognizing, "while likely not in the environment he envisioned reaping some benefit for his laudable rehabilitation, [said] rehabilitation has been fruition" and defendant's "life is 'useful'").

participating in positive prison programs, obtaining a GED, and maintaining a clean disciplinary record, as well as for his plans to transition back to society, the Court does not find this progress and future plans to constitute extraordinary and compelling reasons meriting release even in conjunction with [consideration of other factors.]").

### 3.   Alleged Sentence Disparity with Co-Defendants

Defendant generally contends there is a sentencing disparity between himself and two of his co-defendants, Romaine Hopkins and Kotarra Jackson. (See Motion at 3.) He advances an argument that granting him compassionate release "would realign his punishment with those of others similarly situated and prevent the continued inequity in sentencing outcomes." (Id.) Defendant's position is flawed.

To begin:  As Defendant acknowledged, Hopkins "received a 13-year sentence"[9] (id.), which is greater than Defendant's ten-year sentence. (Compare Hopkins Judgment, ECF No. 378, with Def. Judgment.)  Moreover, Jackson received the same sentence as Defendant, i.e., 120 months' imprisonment. (Compare Jackson Judgment, ECF No. 383, with Def. Judgment.)  Thus, as the

---

[9]   In fact, Hopkins was sentenced to 144 months' (or 12 years') incarceration. (See Hopkins Judgment); see also Hopkins, 2024 WL 4388454, at *1.  However, this discrepancy is irrelevant since it is not disputed that the sentence imposed upon Hopkins was longer than the sentence imposed upon Defendant.

Government aptly argues:  "Clearly, there was no disparity between the [D]efendant's sentence imposed by this Court and those of his codefendant[s]."  (Opp'n at 6.)  The fact that Hopkins' greater sentence and Jackson's equal sentence were subsequently reduced via Presidential commutation (see Clemency Orders, ECF Nos. 580, 581), does not negate the original lack of disparity in those imposed sentences as compared to Defendant's.  (See Opp'n at 6 (arguing "the fact that a President decided to commute the sentences of certain codefendants with similar sentence [does] not render this [D]efendant's sentence unfairly disparate").)  Indeed, by the very terms of statute, consideration of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" is made when a court is "determining the particular sentence to be imposed".  18 U.S.C. § 3553(a) & (a)(6) (emphasis added).  This makes sense since, with few exceptions, see, e.g., the FSA; see also Rabuffo, 2020 WL 2523053, at *1 ("A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."), what occurs to a defendant's sentence after it is imposed and being served, e.g., a reduction as a result of receiving earned time credit or good conduct credit (which is pursuant to the BOP's authority, see 18 U.S.C. § 3632(d)(4) (re: earned time credit), and 18 U.S.C. § 3624(b)(1) (re: good conduct time credit)) or receiving clemency (which is pursuant to a

president's constitutional authority, <u>see</u> U.S. Const. art. II, § 2, cl.1), is outside the purview of the sentencing court.

Moreover, as the Government maintains:  "Gamble's sentence is not unfairly disparate when viewed against the sentences of other codefendants in his case with similar criminal conduct but lesser criminal histories and/or no gang affiliation (Kenneth Belcher, John Gamble, Matthey Pittman, Randy Smith)." The Court agrees.  And, in any event, "a court is not required to consider disparities between co-defendants."  <u>United States v. Johnson</u>, 671 F. Supp. 3d 265, 283 (E.D.N.Y. 2023) (citing <u>United States v. Frias</u>, 521 F.3d 229, 236 (2d Cir. 2008); <u>United States v. Medina</u>, 607 F. App'x 60, 61 (2d Cir. 2015) (summary order)). Hence, Defendant's disparity argument fails.

### 4.  Complaints of Harsh Conditions

Defendant raises general complaints regarding the conditions to which he was exposed during the COVID-19 Pandemic. (<u>See</u> Motion at 3.)  More particularly, he asserts a substantial portion of his incarceration has been served during the Pandemic "under extreme lockdowns and restricted visitation[s]."  (<u>Id.</u> (asserting "[t]hese conditions significantly limited access to educational programming, family contact, and normal prison operations").)  However, to the extent the Pandemic has made Defendant's incarceration more punitive than anticipated, this Court has repeatedly stated:

"[T]hese hardships do not set [him] apart from the rest of the BOP inmate population and therefore do not, alone, constitute extraordinary and compelling reasons for his release.'" United States v. Johnson, No. 98-CR-0860, 2021 WL 1207314, at *4 (E.D.N.Y. Mar. 31, 2021)); see also, e.g., United States v. Veliu, No. 17-CR-0404, 2022 WL 2484240, at *5 (E.D.N.Y. July 6, 2022) ("[T]he conditions of confinement during the pandemic [do not] give rise to extraordinary and compelling circumstances. Although the Court acknowledges that 'the pandemic has made prison conditions harsher than usual, those are circumstances that all inmates have had to endure. While the Court does not minimize those difficulties, they do not rise to the level of extraordinary and compelling.'") (quoting United States v. Johnson, No. 18-CR-0907, 2021 WL 4120536, at *3 (S.D.N.Y. Sept. 9, 2021)); United States v. Pinto-Thomaz, 454 F. Supp. 3d 327, 329 (S.D.N.Y., 2020) (observing "it is hard to see how" the BOP's implementation of various protocols in attempting to contain the spread of COVID-19 "ma[d]e the situations of [defendants] 'extraordinary' in terms of the statutory requirement, for in these respects [the defendants] are no different from a host of other prisoners"). Standing alone, the harshness of conditions Defendant faced during the Pandemic were the same as those endured by his fellow inmates; in that sense, they were not extraordinary. See, e.g., United States v. Martinez, No.03-CR-1049, 2022 WL 3019833, at *3 (E.D.N.Y. July 29, 2022) ("[G]eneralized COVID-19 concerns are not regarded as extraordinary and compelling reasons for compassionate release." (citations omitted)). Nor, given the record, is this a case where, considering several circumstances in totality, the harshness factor should weigh in favor of finding an extraordinary and compelling reason for granting compassionate release.

United States v. Farmer, No. 04-CR-0209, 2025 WL 3033762, *11

(E.D.N.Y. Oct. 30, 2025); see also United States v. Yong, No. 95-CR-0825, 2024 WL 3648259, at *7 (E.D.N.Y. (Aug. 5, 2024) (same); United States v. Santana, No. 15-CR-0457, 2025 WL 1940370, at *4 (E.D.N.Y. July 15, 2025) (same); Latney, 2025 WL 1126474, at *6 (same); United States v. Brown, No. 18-CR-0604, 2024 WL 4790165, at *5 (E.D.N.Y. Nov. 14, 2024) (same); United States v. Hernandez, No. 04-CR-0939, 2024 WL 4450851, at *4 (E.D.N.Y. Oct. 9, 2024) (same); United States v. Moss, No. 14-CR-0147, 2024 WL 3718909, at *5 (E.D.N.Y. Aug. 7, 2024) (same); United States v. Wagner, No. 17-CR-0106, 2024 WL 2801981, at *6 (E.D.N.Y. May 31, 2024) (same).

Moreover, because the COVID-19 Public Health Emergency ended on May 11, 2023, it is no longer necessary for the BOP to engage in across-the-board special operations. See Wagner, 2024 WL 2801981, at *5 (citations omitted). Indeed, "the Court presumes the BOP has returned to operating [Defendant's current facility] without COVID-19-related precautions, rendering this consideration of little weight." Id. (citing Jones, 17 F.4th at 375 (confinement in facility "where [COVID-19] counts are currently low" was not "extraordinary and compelling" circumstance)); see also Latney, 2025 WL 1126474, at *5 (same; quoting Wagner). Upon consideration of Defendant's harshness argument, the Court finds it unavailing.

5.  Defendant's Hypertension

Defendant makes a passing reference to suffering from hypertension (see Motion at 3 (in context of Section 3553(a)

25

Factors, discussing history and characteristics)); however, suffering from that condition in this instance fails to rise to the level warranting compassionate release. See, e.g., United States v. Gerald, No. 13-CR-0141, 2024 WL 4694004, at *6 (E.D.N.Y. Nov. 6, 2024) (denying compassionate release where "there is no indication Defendant's hypertension and other identified medical conditions are not well-controlled with medication and necessary medical care provided by [the federal correctional facility]" and there is nothing "in the record showing Defendant is not fully ambulatory and engaging in all normal activities of daily living"); see also Yong, 2024 WL 3648259, at *6 (denying compassionate release where record presented no reason to conclude defendant's hypertension was not being properly addressed by the BOP) (collecting cases). Indeed, upon the record presented, Defendant has failed to show his medical condition "so incapacitate[d] him as to warrant a reduction of his sentence." United States v. Lisi, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) ("BOP's guidance, read in conjunction with the Application Notes to [Policy Statement 1B1.13], indicate that a defendant's medical condition must be one of substantial severity and irremediability, and [defendant] has not shown that he suffers from such conditions."); see also United States v. Delacruz Santana, No. 16-CR-0337, 2024 WL 4449443, at *6 (E.D.N.Y. Oct. 2, 2024) (denying compassionate release where defendant "d[id] not indicate that his ability to provide self-care

. . . ha[d] been substantially diminished by his illnesses" and stating, "[w]here such evidence is lacking, courts within the Second Circuit have routinely denied compassionate release motions" (collecting cases)); United States v. Brown, No. 12-CR-0120, 2024 WL 1639926, at *2 (E.D.N.Y. Apr. 16, 2024) (denying compassionate release where defendant "d[id] not allege that his health conditions—hypertension, high cholesterol, and unspecified 'other conditions'—[we]re terminal, diminish[ed] his ability to provide self-care, or require[d] long-term or specialized care that [wa]s not being provided"); United States v. Mohammed, Nos. 18-CR-0509, 20-CR-0581, 2024 WL 2701639, at *2-3 (E.D.N.Y. May 18, 2024) (denying compassionate release where defendant failed to meet the Guidelines "Medical Circumstances" criteria, i.e., U.S.S.G. § 1B1.13(b)(1))); Lake, 2023 WL 8810620, at *4 ("[C]ourts have found that high blood pressure is not an extraordinary and compelling reason for an inmate's release.") (quoting United States v. Jones, No. 02-CR-0778, 2020 WL 7640944, at *3 (E.D. Pa. Dec. 23, 2020) (collecting cases)).  Therefore, this condition does not offer an avenue to relief.

At bottom, individually or collectively, the proffered circumstances Defendant presents do not rise to the level of extraordinary or compelling.  Therefore, there is no basis to grant Defendant's Motion.

C.    The Section 3553(a) Factors

"[A] district court may deny a motion for compassionate release in 'sole reliance' on the Section 3553(a) [F]actors, without determining 'whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.'" Jones, 2023 WL 8613867, at *2; see also Keitt, 21 F.4th at 73 n.4 (noting "a district court may rely solely on the § 3553(a) factors when denying defendant's motion for compassionate release"); United States v. Andrews, No. 23-8046-CR, 2025 WL 2938044, at *3 (2d Cir. Oct. 16, 2025) (summary order) (same; quoting Keitt); Jones, 17 F.4th at 374 ("[A] district court's 'reasonable evaluation of the Section 3553(a) [F]actors' is 'an alternative and independent basis for denial of compassionate release.'" (quoting United States v. Robinson, 848 F. App'x 477, 478 (2d Cir. 2021)); United States v. Mayes, No. 23-6077-CR, 2024 WL 2990909, at *1 (2d Cir. June 14, 2024) (summary order) (same; quoting Jones).

> The [Section 3553(a) F]actors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to provide the defendant with needed educational or vocational training, medical care, or other

> correctional treatment in the most effective
> manner."  18 U.S.C. § 3553(a)(1)-(2).

United States v. Johnson, 671 F. Supp. 3d 265, 283 (E.D.N.Y. 2023).

In advancing his position that the Section 3553(a) Factors favor his release, Defendant argues: (1) his role in the conspiracy was "limited, nonviolent, and absent aggravating factors" (Motion at 3); (2) he "has become a rehabilitated, remorseful, and goal-driven individual" (id.; see also Reply at 2); (3) although he has hypertension, "he has no health issues that would impede his successful reentry" (id.); (4) "he is not a danger to society", with the "message of accountability" having been received (id. at 4; see also Reply at 2); (5) having "served more than half of his sentence under unusually harsh conditions and while enduring profound personal loss", he has been justly punished (id.); and (6) there is a disparity in his sentence as compared to those of his co-defendants who received clemency (see id.)  The Court observes said arguments are mostly reiterations of Defendant's purported extraordinary and compelling circumstances.

In putting forth its contrary position, the Government presses the serious nature of Defendant's crime, asserting Defendant's participation in "an ongoing conspiracy to distribute controlled substances" in Eastern Long Island is the "type of drug dealing [that] blights communities and ruins lives." (Opp'n at 7.)  It contends Defendant's criminal conduct was "part of a

29

pattern of criminal conduct several decades long." (Id.) In consideration of promoting respect for the law and providing just punishment, the Government argues it would be antithetical to the purposes of those sentencing factors to grant a sentence reduction to Defendant, a "gang member who engaged in a years' long drug conspiracy to distribute large quantities of narcotics" and who has "multiple prior drug felonies". (Id. at 8.) Finally, the Government maintains deterrence and protection of the public require Defendant's current sentence remain unchanged, which sentence "sends a clear message that gang members who participate in large scale narcotics conspiracies will meet severe consequences." (Id.) In sum, it asserts the Section 3553(a) Factors outweigh any extraordinary and compelling reasons Defendant could establish, which he has not, thereby compelling the denial of Defendant's Motion. (See id.)

In reply to the Government's Opposition, Defendant continues to argue the Section 3553(a) Factors favor release because:

> [a]fter doing six years in federal prison, [he] has absolutely gained respect for the law as a reformed ex-gang member. That is definitely enough punishment for the offense and enough to make anyone think twice about further criminal conduct, especially with years of supervised release over his head. The public does not have to worry about further crimes from the [D]efendant, because probation will be monitoring [him] and the [D]efendant's certificates demonstrate his

30

positive correctional treatment in the most
effective manner.

(Reply at 2.)

At the outset, and as Defendant concedes, when
sentencing him, in fashioning its sentence, the Court already
considered Defendant's "maturity, devotion to his children, and
earnest desire to reform his life" and observed Defendant "had
'grown up' and demonstrated a genuine desire to change, further
observing that [Defendant] had maintained a clean disciplinary
record during pretrial detention[,] something the Court found
notable given his prior history."   (Motion at 2.)   Indeed,
consideration of those factors led to the Court's granting the
Government's letter motion requesting a very substantial
below-Guidelines sentence for Defendant.   (See Letter Motion, ECF
No. 335, at 1; Statement of Reasons, §§ V(A) & (B)(1).)   In its
Letter Motion, the Government had argued:

> Here, under the circumstances specific to
> this defendant, a sentence of 120 months'
> imprisonment will be sufficient, but not
> greater than necessary to serve the goals of
> sentencing.   First, the sentence of 120
> months' imprisonment will serve to remove the
> defendant and his drug dealing activities from
> the community for an extended period of time,
> thus protecting the community.   Second, while
> the defendant has served multiple prior drug
> related sentences, the longest of those
> sentences was four years' imprisonment.   Here,
> the deterrent effect of a sentence of 120
> months' will be substantially greater than
> prior sentences which failed to deter future
> criminal conduct by the defendant.

Additionally, a sentence of 120 months' imprisonment will also provide general deterrence by demonstrating what individuals who participate in large scale, years' long drug distribution operations for personal gain, and pose a danger to the communities on Long Island, will face substantial criminal sanctions. While the sentencing Guidelines call for a much more stringent punishment be imposed upon the defendant, a sentence of 120 months' imprisonment, based upon all of the factors present in this case, would be sufficient but not greater than necessary to provide just punishment and reflect the seriousness of this defendant's conduct during the charged conspiracy.

(Letter Motion at 1.) The Government's position was based upon Defendant: not being the largest drug dealer in the conspiracy; not actively participating in gang affairs, as did many of his co-defendants; and, although a gang member, associating himself with this particular conspiracy for personal gain and not to advance any gang goals. (See id.)

Now, in its discretion and having considered the relevant Section 3553(a) Factors anew, the Court finds there remains a need for Defendant to serve the sentence imposed. Indeed, there is nothing before the Court that changes its original analysis of the Section 3553(a) Factors, especially given the significant below-Guidelines sentence imposed, which was based, in large part, upon the nature and circumstances of Defendant's offense. (See Statement of Reasons, § V(B)(1) (indicating below-Guidelines sentence imposed based upon motion for departure

pursuant to plea agreement, which Court found reasonable)); see also, e.g., United States v. Santana, No. 15-CR-0457, 2021 WL 1999406, *4 (E.D.N.Y. May 19, 2021) (explaining granting compassionate release when the Court had imposed a below-Guidelines sentence would "disserve" the purposes of the Section 3553(a) Factors); cf., e.g., Latney, 2025 WL 1126474, at *11 (determining "Court's original consideration of the relevant Section 3553(a) Factors continue[d] to carry substantial weight").

> Rather, in its discretion, the Court finds, even if Defendant had presented extraordinary and compelling circumstances warranting compassionate release, which he has not, the Section 3553(a) Factors would override those circumstances. The Court's below-Guidelines, [120]-month sentence of imprisonment continues to be appropriate to, inter alia: promote respect for the law; reflect the seriousness of the offense; provide just punishment; adequately deter criminal conduct; and protect the public from the Defendant, thereby satisfying the applicable Section 3553(a) Factors.

Hopkins, 2024 WL 4388454, at *4; see also, e.g., Brown, 2024 WL 4790165, at *7 (same; stating further "for individual and general deterrence purposes, it is necessary that those who participate in the illegal drug trade, which plagues Long Island communities, be sent a clear and unambiguous message that if they do, they will be prosecuted, sentenced to substantial sentences, and be required to serve every day of those sentences" (citation modified)); cf., e.g., Lake, 2023 WL 8810620, at *6 (stating, as to gang member

participating in the illicit drug trade, "those who choose to join gangs need to know they will be prosecuted, sentenced to substantial sentences, and required to serve those sentences"); Wagner, 2024 WL 2801981, at *8.  In sum, Defendant's substantial below-Guidelines sentence of 120 months' incarceration continues to be "sufficient, but not greater than necessary, to comply with the purposes of § 3553(a)."  (Statement of Reasons, § VIII.)

-*-*-*-

To the extent not explicitly addressed herein, the Court has considered Defendant's remaining arguments for a sentence reduction and finds them to be without merit.

<u>CONCLUSION</u>

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion seeking a sentence reduction (ECF No. 590) is **DENIED** in its entirety and without prejudice; and

**IT IS FURTHER ORDERED**, the Clerk of the Court is directed to mail a copy of this Memorandum and Order to Defendant at his address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  November 4, 2025
        Central Islip, New York

34